The document below is hereby signed.

Dated: June 15, 2012.



_____

**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                                    )
                                         )
                                         )    Case No. 09-00414
STEPHEN THOMAS YELVERTON,                )    (Chapter 7)
                                         )
               Debtor.                   )
_____         )
                                         )
                                         )
STEPHEN THOMAS YELVERTON,                )
                                         )
               Plaintiff,                )
                                         )
          v.                             )    Adversary Proceeding No.
                                         )    12-10018
LUDWIG & ROBINSON, PLLC,                 )
                                         )    Not for publication in
               Defendant.                )    West's Bankruptcy Reporter.

MEMORANDUM DECISION RE MOTION TO DISMISS

     Stephen Thomas Yelverton, as the debtor in Case No.

09-00414, received a discharge.  His complaint in this adversary

proceeding alleges that Ludwig & Robinson, PLLC has violated the

discharge injunction by its pursuit of a civil action brought by

Ludwig & Robinson against the Yelverton Law Firm, PLLC, and

Yelverton's former wife, Alexandra-Nicole Senyi de Nagy-Unyom,

that is pending in the Superior Court of the District of

Columbia, *Ludwig & Robinson, PLLC v. Yelverton Law Firm, PLLC and Alexandra-Nicole Senyi de Nagy-Unyom*, Civil Action No. 2009 CA 007194 B.   On January 10, 2011, Yelverton Law Firm, PLLC removed that civil action to this court (*see* Adv. Pro. No. 11-10001).   On April 28, 2011, after pending briefly in this court, the civil action was remanded to Superior Court.   In disposing of Ludwig & Robinson's motion to remand in that proceeding, this court rejected Yelverton Law Firm, PLLC's contention that the civil action violates the discharge injunction, but also noted that the law firm lacked standing to assert violations of the discharge injunction, which arose only in favor of Yelverton.   Yelverton, who does have standing to assert violations of the discharge injunction, has filed this adversary proceeding and contends that Ludwig & Robinson's pursuit of the civil action against Yelverton Law Firm and Senyi violates the discharge injunction. Specifically, relying on *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1 (B.A.P. 1st Cir. 2009), Yelverton asserts that the civil action is an attempt to coerce him to pay a discharged debt and thus violates the discharge injunction.   The court will grant Ludwig & Robinson's motion to dismiss for the following reasons.

I

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the well-pled facts of the complaint.   A complaint will survive a motion to dismiss if it

2

contains sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addition to the facts alleged in the complaint, the court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Courts may permissibly "take judicial notice of matters of public record . . . including the fact of [ ] litigation and related filings." *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (distinguishing between the fact of litigation and filings, and the truth of the matter asserted in those filings, and finding that, under the unique circumstances presented, it was appropriate to take judicial notice, for the truth of the matter asserted, of a crucial admission made by the plaintiff in a separate litigation). *See also In re Chinese Manufactured Drywall Prods. Liab. Litigation*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) (in

3

reviewing a 12(b)(6) motion to dismiss, "a court may take judicial notice of items in the record of the case, related cases, and matters of public record . . . ."); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n. 5 (3d Cir. 2006) (district court properly considered opinions and pleadings from related proceeding that were attached to the complaint).

The Superior Court complaint that is the basis for Yelverton's allegation that Ludwig & Robinson has violated the discharge injunction was, at one time, pending before this court as a removed cause of action (Adv. Pro. No. 11-10001, Bankr. D.D.C.). Before that action was remanded to the Superior Court, various papers were filed in this court that flesh out the allegations of the Superior Court complaint. Those filings are a matter of public record, and this court will take judicial notice of those filings in ruling on the motion to dismiss in this proceeding.

II

Yelverton had no debt obligation to Ludwig & Robinson. Accordingly, whatever actions Ludwig & Robinson is taking to collect obligations of Yelverton's law firm, Yelverton Law Firm, PLLC, and of his former wife, Alexandra-Nicole Senyi de Nagy-Unyom, cannot be an effort to coerce payment by Yelverton of a debt he owes Ludwig & Robinson.

4

Yelverton Law Firm, PLLC was obligated as sub-lessee on a sub-lease for rent to Ludwig & Robinson, as sub-lessor, and Ludwig & Robinson also billed the Yelverton Law Firm, PLLC for medical insurance premiums for Yelverton's wife, Senyi.  On August 10, 2011, Ludwig & Robinson filed a complaint in this court, assigned Adversary Proceeding No. 09-10023, contending that the obligations were for property and services procured by fraud, and seeking a determination of nondischargeability. Ludwig & Robinson also filed a proof of claim in Yelverton's bankruptcy case to which Yelverton objected.  *See* Claim No. 26 in the amount of $14,405.56; Dkt. No. 97 in Case No. 09-00414.

The court set both matters for hearing together, with the pretrial statements in the adversary proceeding to apply as well to the objection to claim.  In his pretrial statement, Yelverton denied that he had been obligated to pay Ludwig & Robinson for his wife's medical insurance premiums, and (referring to Ludwig & Robinson as "L&R") stated:

> What L&R actually had was a "separate agreement" with Alexandra Senyi de Nagy-Unyom, as an <u>employee</u> of L&R, to provide her with individual medical coverage at $457 per month.  Accordingly, <u>neither</u> the Debtor/Defendant, <u>nor</u> Yelverton Law Firm, had any liability for the payment of medical premiums for an employee of L&R, and thus these amounts must be Disallowed.

[Emphasis in original.]   The trial ended on May 25, 2010.  In an oral decision of that same date, the court agreed with Yelverton that he had no liability for the payment of the medical premiums

(albeit on slightly different grounds) or the rent.

Specifically, the court concluded that the rent and medical

insurance obligations owed Ludwig & Robinson--obligations which

had consistently been billed to the Yelverton Law Firm, PLLC--

were obligations of Yelverton Law Firm, PLLC, not Yelverton.  The

court further concluded that Yelverton had not engaged in fraud

in causing the Yelverton Law Firm, PLLC to run up sub-lease

rental obligations and medical insurance coverage obligations,

and thus no debt for fraud existed.  Orders then followed

dismissing the adversary proceeding and disallowing Ludwig &

Robinson's proof of claim.  Those orders were entered long before

Ludwig & Robinson commenced its civil action in the Superior

Court.

                                III

     Yelverton cites to *Lumb v. Cimenian (In re Lumb)* in support

of his contention that Ludwig & Robinson's pursuit of the civil

action violates the discharge injunction.  401 B.R. 1 (B.A.P. 1st

Cir. 2009).  In that case, the debtor, Lumb, owed a prepetition

debt to Cimenian.  Notwithstanding that he had no valid claims

against her, Cimenian threatened to sue Lumb's wife if Lumb

failed to repay the debt.  When Lumb, who had received a

discharge in bankruptcy, failed to pay, Cimenian followed through

on his earlier threat and filed a frivolous lawsuit against

Lumb's wife.  In reversing the bankruptcy court's dismissal under

                                6

Rule 12(b)(6), the Bankruptcy Appellate Panel of the First Circuit held that these facts were sufficient to state a claim for violation of the discharge injunction. *In re Lumb* merely illustrates that a creditor's indirect effort to collect a debt *owed by the debtor* through coercion can violate the discharge injunction.

Here, in contrast, Yelverton's complaint itself makes clear that Yelverton owed no debt to Ludwig & Robinson. Likewise, this court has previously determined that no debt was owed by Yelverton to Ludwig & Robinson. Accordingly, Ludwig & Robinson cannot be said to be attempting indirectly (via coercion visited on Yelverton's former wife and his law firm) to collect a debt owed by Yelverton, and that distinguishes this case from *In re*

*Lumb.*[1]

IV

Moreover, it is clear that the Yelverton Law Firm, PLLC was obligated to Ludwig & Robinson for rent, that either the Yelverton Law Firm, PLLC or Senyi was obligated for the medical insurance premiums relating to Senyi, and that Ludwig & Robinson asserted a facially sound basis for holding Senyi liable for the rent via a fraudulent conveyance claim.[2]  That further

---

[1]  Similarly distinguishable is *In re Borowski*, 216 B.R. 922 (Bankr. E.D. Mich. 1988), for reasons this court articulated in Adversary Proceeding No. 11-10001, in rejecting Yelverton Law Firm, PLLC's contention, advanced by its attorney, Yelverton, that prosecution of the civil action violated the discharge injunction:

> there is no debt owed by Yelverton that would be indirectly collected via suing Senyi.  The PLLC's reliance on *In Re Borowski*, 216 B.R. 922, 924 (Bankr. E.D. Mich. 1998), is misplaced.  There, a creditor was attempting in bar disciplinary proceedings against a debtor-attorney to have the bar require, as part of disciplinary sanctions, that the debtor pay the creditor's claim for malpractice.  Such an indirect attempt to coerce the debtor to make payment of his own debt to the plaintiff is not present here.

*Memorandum Decision re Motion for Sanctions* (Adv. Pro. No. 11-10001, Dkt. No. 30, filed June 10, 2011) at 2.

[2]  The Superior Court issued an oral ruling on December 10, 2010, that Senyi's motion to dismiss the complaint be denied. See the civil action's docket sheet (found at pages 11-22 of part 1 of Dkt. No. 4 in Adv. Pro. No. 11-10001).  More importantly, Ludwig & Robinson's amended complaint in the civil action alleges a facially plausible basis for asserting a recovery of the rent and medical insurance obligations from Senyi as a recipient of a fraudulent conveyance from the Yelverton Law Firm, PLLC.  (The amended complaint in the civil action is found at pages 29-35 of Vol. 1-B of Dkt. No. 4 in Adv. Pro. No. 11-10001.)

distinguishes this case from *In re Lumb*, because the creditor in
*In re Lumb* had absolutely no basis for suing the debtor's wife.
Here, Ludwig & Robinson had legitimate bases for suing both the
Yelverton Law Firm, PLLC and Senyi.

Incident to objecting to Ludwig & Robinson's proof of claim,
Yelverton argued to this court that Senyi is the entity liable
for the medical insurance. He cannot have it both ways: he
cannot contend in this proceeding that he owed the debt for the
premiums when he previously contended, to his advantage, that
only Senyi owed the debt. Having received the benefit of the
disallowance of Ludwig & Robinson's proof of claim for medical
insurance premiums, Yelverton is barred by the doctrine of
judicial estoppel from now contending that, all along, he was the
entity liable for paying the medical insurance premiums.
Yelverton's change in position is a vain attempt to portray
Ludwig & Robinson's civil action as an effort to coerce payment
of a discharged debt as to Yelverton, when the civil action is no
more than an effort to collect a debt alleged to be owed by the
Yelverton Law Firm and Senyi.

As to Ludwig & Robinson's pursuit of the fraudulent
conveyance claim, Yelverton appears to concede that fees he
earned after forming Yelverton Law Firm, PLLC were property of
that firm. Nevertheless, he contended at the scheduling
conference in this proceeding that the funds that Ludwig &

9

Robinson alleges were fraudulently transferred to Senyi were
*his* funds, derived from legal work he performed prior to forming
the Yelverton Law Firm, PLLC, and were not Yelverton Law Firm,
PLLC's funds.  But he did not allege that in his complaint.  More
importantly, Ludwig & Robinson is entitled to take discovery in
the civil action to test Yelverton's contention, and to attempt
to demonstrate that the funds rightfully were the property of
Yelverton Law Firm, PLLC.  Nothing in the complaint establishes
that Ludwig & Robinson has no basis whatsoever for pursuing its
fraudulent conveyance claim against the Yelverton Law Firm and
Senyi.  If the transferred funds *were* Yelverton's, then the
Yelverton Law Firm can readily use that as a basis to defeat the
claim for a fraudulent conveyance.

As the court ruled in rejecting Yelverton Law Firm, PLLC's
Rule 59(e) motion in Adversary Proceeding No. 11-10001, which was
advanced on its behalf by Yelverton and which sought to set aside
the order denying Yelverton Law Firm, PLLC's motion for
sanctions:

> It suffices to say, as I believe the June 10, 2011,
> decision makes clear, that at bottom the Superior Court
> law suit is not an action commenced against the debtor
> or an action to collect property of the debtor's
> estate.  As I previously explained, Ludwig and
> Robinson's Superior Court action against Yelverton Law
> Firm and Senyi is appropriately limited to seeking to
> recover against those parties.  To the extent those
> parties are without assets, the suit will ultimately
> prove fruitless.

*Memorandum Decision Re Motion to Alter or Amend Per Rule 59(e)*

(Dkt. No. 50, entered on July 25, 2011, in Adv. Pro. No.
11-10001) at 2.

V

Paragraph 11 of Yelverton's complaint alleges that in its
amended complaint in the civil action, Ludwig & Robinson "alleged
that Debtor Yelverton fraudulently transferred on or about
February 2, 2008, to his wife, Defendant Senyi, the amount of
$120,000 to avoid payment of $11,825.98 in alleged Debts to
it."[3]  An examination of Ludwig & Robinson's amended complaint in
the civil action reveals, however, that as the basis for its
fraudulent conveyance claim it pled that "YLF, through its
founder and managing member Yelverton, transferred substantially
all of its assets to Senyi."  Civil Action No.  2009 CA 007194 B,
Amended Complaint, ¶ 36.  Alleging that Yelverton aided in
facilitating that transfer did not assert a claim against
Yelverton; he was not a named defendant and the complaint did not
seek any relief against him.

VI

Yelverton's complaint further alleges:

14.  Defendant Senyi, the wife of Debtor Yelverton,
was named as a co-Defendant in the alleged Fraudulent

---

[3]  The amended complaint in the civil action is found at
pages 29-35 of Vol. 1-B of Dkt. No. 4 in Adv. Pro. No. 11-10001.
The civil action's docket sheet (found at pages 11-22 of part 1
of Dkt. No. 4 in Adv. Pro. No. 11-10001) reflects that the
Superior Court issued an oral ruling that the motion for leave to
file the amended complaint would be granted.

> Conveyance of $120,000, because YLF had <u>no</u> assets and <u>no</u>
> income for L&R to collect on a Judgment.  L&R knew that
> Debtor Yelverton was obligated to indemnify Defendant
> Senyi from such claims under their Pre-Marital Agreement,
> dated September 29, 2006.  These actions by L&R were
> intentional and were "coercive" in effect because of the
> fraud allegations against Debtor Yelverton.

[Emphasis in original.]  This allegation does not plausibly state

a claim to coerce payment of a discharged debt that was owed by

Yelverton.  Instead, it relates to the assertion of a debt owed

by Senyi, as a recipient of a fraudulent conveyance from

Yelverton Law Firm, PLLC, for which Yelverton was obligated to

indemnify Senyi.  What Yelverton neglects to acknowledge is that,

as a matter of law, he will be obligated to indemnify Senyi only

to the extent that his indemnification obligation to Senyi

escaped discharge.  If Ludwig & Robinson recovers a judgment

against Senyi, that merely will prove the *bona fides* of the civil

action against Senyi.  If, in turn, Yelverton remains obligated

to indemnify Senyi based on a non-discharged indemnification

agreement between Senyi and Yelverton, that obligation, owed by

Yelverton to Senyi, does not render Ludwig & Robinson's

meritorious lawsuit against Senyi an improper attempt to coerce

Yelverton to pay a discharged debt that was owed by Yelverton to

Ludwig & Robinson.

## VII

Finally, Yelverton's complaint alleges instances in which,

in settlement negotiations in the civil action, Ludwig & Robinson

demanded payment by Yelverton of Yelverton Law Firm, PLLC's debt.

For example, the complaint alleges:

> At the Settlement Conference on September 23, 2011, in
> Case No. 2009 CA 007194 B, L&R demanded that Debtor
> Yelverton personally pay for the Debts to it because YLF
> had <u>no</u> assets and <u>no</u> income.  The claims are for the <u>same</u>
> Debts in which Debtor Yelverton was Discharged. These
> actions by L&R were intentional and were "coercive" in
> effect because of the fraud allegations against Debtor
> Yelverton.

Compl. ¶ 16. [Emphasis in original.]  A similar allegation is

made regarding a December 7, 2011 pretrial conference in the

civil action.  Compl. ¶ 18.  There were no debts owed by

Yelverton to Ludwig & Robinson.  Accordingly, any Ludwig &

Robinson demand in settlement negotiations for Yelverton to pay

the debts of Yelverton Law Firm, PLLC in exchange for some

disposition of the civil action cannot be an act to coerce

payment of a discharged prepetition debt of Yelverton.

Expanding on the theory that Ludwig & Robinson's dealings

with Yelverton in connection with the civil action violated the

discharge injunction, the complaint alleges that Ludwig &

Robinson admitted that it made settlement demands on Yelverton as

a liquidating trustee of Yelverton Law Firm.  Compl. ¶ 20.  It

then alleges that Yelverton was never appointed a liquidating

trustee of Yelverton Law Firm, PLLC, and has never served in that

capacity.  Compl. ¶ 21.  Y

Yelverton may be right that he has never served as a

liquidating trustee (but, as explained later, that is of no

consequence to the issue of whether the discharge injunction has been violated).  Yelverton asserts that Yelverton Law Firm, PLLC was administratively dissolved by the Commonwealth of Virginia on December 31, 2008.  Compl. ¶ 1.  Once articles of cancellation are filed as to a PLLC, *see* Va. Code § 13.1-1050(A), a PLLC's members act as liquidating trustees responsible for liquidating the PLLC's assets and reserving for disputed unpaid debts.  There is no allegation that articles of cancellation have been filed.  Nor is there an allegation that a court appointed liquidating trustees under  Va. Code § 13.1-1048(B).[4]

Under Virginia law, the dissolution of a limited liability company does *not* terminate the limited liability company's existence, and claims may still be asserted against the limited liability company.[5]  Va. Code Ann. § 13.1-1049.1.  The PLLC still continued in existence after dissolution and remained an appropriate defendant against whom a monetary judgment for an

---

[4]  Certain amendments to the Virginia Limited Liability Company Act were approved on March 2, 2008, and went into effect on April 1, 2009.  The alleged dissolution of the Yelverton Law Firm, PLLC occurred prior to the effective date of these amendments.  The then-applicable Va. Code provision addressing the appointment of a liquidating trustee was Va. Code § 13.1-1048(A).

[5]  To terminate the existence of a PLLC after dissolution, articles of cancellation must be filed with the State Corporation Commission of Virginia, and if the Commission finds that the articles of cancellation comply with the law and all required fees have been paid, the Commission shall issue a certificate of cancellation.  *See* Va. Code Ann. 13.1-1050 (this provision was in effect in 2008 as well).

14

unpaid debt could be obtained.  And it would, by extension, be
appropriate to direct a demand for payment to Yelverton, the
PLLC's sole member and its attorney of record.  Even if Yelverton
were *not* the liquidating trustee for Yelverton Law Firm, PLLC,
Ludwig & Robinson's alleged erroneous assertion, made in
settlement negotiations regarding settling Ludwig & Robinson's
claim in the civil action for a monetary judgment *against*
*Yelverton Law Firm PLLC* (not against Yelverton), that he *is* such
a liquidating trustee, responsible for administering the PLLC's
assets, and ought to make a payment of the claim in order to
obtain an agreed disposition of the civil action, changes
nothing: such demands are only an effort to collect a debt of the
PLLC, not of Yelverton.

Ironically, Yelverton's focus on the liquidating trustee
issue only serves to emphasize the propriety of Ludwig &
Robinson's suing Yelverton Law Firm, PLLC for the debt it owed,
and demanding, in settlement negotiations, some payment of that
debt in exchange for a dismissal of the civil action.  Once
articles of cancellation are filed, *see* Va. Code § 13.1-1050(A),
the PLLC's members act as liquidating trustees responsible for
liquidating the PLLC's assets and reserving for disputed unpaid
debts.  This strengthens Ludwig & Robinson's position that it was
permissible to sue Yelverton Law Firm, PLLC: if the PLLC's debts
must still be paid *after* cancellation of its existence, it

15

follows that after dissolution and *prior* to cancellation of its existence, it is appropriate to sue the PLLC for a debt it owes, and to make demand upon the PLLC, through its attorney and sole member, for some payment of the debt as a price for consensual resolution of the civil action.  It was appropriate for Ludwig & Robinson to look to Yelverton, in his representative capacity, to negotiate the terms of any consensual resolution of Ludwig & Robinson's claims against Yelverton Law Firm.  To repeat, Ludwig & Robinson's mistakenly calling Yelverton a liquidating trustee instead of making a demand on him as a member of the PLLC and as its attorney of record, does not alter the propriety of Ludwig & Robinson demanding that Yelverton, as the sole representative of the PLLC, make some payment of the debt as the price for the consensual resolution of the civil action pending against the Yelverton Law Firm.

## VIII

Based on the foregoing, an order follows dismissing this adversary proceeding.

[Signed and dated above.]

Copies to: All counsel of record.