**The document below is hereby signed.**

**Dated: October 16, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
            UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
                               )   Case No. 09-00414
STEPHEN THOMAS YELVERTON,      )   (Chapter 7)
                               )
            Debtor.            )
_____)
                               )
                               )
STEPHEN THOMAS YELVERTON,      )
                               )
            Plaintiff,         )
                               )
       v.                      )   Adversary Proceeding No.
                               )   12-10018
LUDWIG & ROBINSON, PLLC,       )
                               )   Not for publication in
            Defendant.         )   West's Bankruptcy Reporter.
```

MEMORANDUM DECISION RE MOTION TO ALTER OR AMEND
AND VACATE JUDGMENT AND MOTION FOR LEAVE TO AMEND COMPLAINT

The plaintiff, Stephen Thomas Yelverton, seeks to have the court vacate its judgment dismissing this adversary proceeding. He also seeks leave to file an amended complaint. His motions will be denied. The reader is presumed to have familiarity with the *Memorandum Decision* addressing Ludwig & Robinson's motion to dismiss the original complaint.

I

A.

In his motion to alter or amend and vacate the judgment, Yelverton complains that the court improperly took judicial notice of certain documents without providing Yelverton adequate notice and opportunity to be heard.  Specifically, Yelverton contends that the court improperly relied on Yelverton's pretrial statement in Adversary Proceeding No. 09-10023 (relating as well to Yelverton's objection in the main case to Ludwig & Robinson's proof of claim) to conclude that Yelverton concedes that Senyi is liable for the insurance premiums for which Ludwig & Robinson sought repayment.[1]  In his motion, Yelverton contends that his actual position is that Ludwig & Robinson, not Senyi, is liable for the medical insurance premiums because it had agreed to treat

---

[1] The pretrial statement contended that the Yelverton Law Firm, PLLC had no agreement with Ludwig & Robinson regarding compensating Ludwig & Robinson for providing medical insurance coverage for Senyi.  It then stated:

> 7. What L&R actually had was a "separate agreement" with Alexandra Senyi de Nagy-Unyom, as an employee of L&R, to provide her with individual medical coverage at $457 per month. Accordingly, neither the Debtor/Defendant, nor Yelverton Law Firm, had any liability for the payment of medical premiums for an employee of L&R, and thus these amounts must be Disallowed.

2

Senyi as an employee.[2]

    Because Ludwig & Robinson had an agreement with Senyi, not Yelverton or the Yelverton Law Firm, PLLC, if Ludwig & Robinson was entitled to reimbursement for the premiums, common sense dictates that Senyi was the person who would be liable, making her a logical target for any suit to recover those premiums. Whether Yelverton ever formally took the position that Senyi is liable for the premiums, however, is irrelevant, and the court need not take any view with respect to this issue in order to grant Ludwig & Robinson's motion to dismiss. The critical fact, and the one on which the court's dismissal of this action rests, is that Yelverton prevailed on his objection to Ludwig & Robinson's claim by contending that he, himself, was *not* liable for those premiums. Yelverton relied on that argument to obtain

---

    [2] My recollection from the trial of Adversary Proceeding No. 09-10023 and of the objection to Ludwig & Robinson's claim is that Senyi never actually performed services for Ludwig & Robinson, and that she was carried as an employee on the employee roster for the group medical insurance policy so that she could obtain medical insurance coverage, with Ludwig & Robinson expecting reimbursement for the premiums. Again, it is unnecessary to decide whether Senyi was liable to Ludwig & Robinson for those premiums, or whether Yelverton ever took the position that Senyi was liable for those premiums. The critical fact for our purposes is that Yelverton took the position that he was not liable for those premiums, and in doing so, secured a judgment in Adv. Pro. No. 09-10023 declaring that Ludwig & Robinson holds no claims against him. Yelverton cannot turn around now, pointing to an alternate theory of why he is, contrary to that judgment, liable for the premiums, to support a claim against Ludwig & Robinson for an alleged violation of the automatic stay and the discharge injunction.

a final judgment in adversary proceeding No. 09-10023 and a final order entered on June 2, 2010, in his bankruptcy case, Case No. 09-00414, declaring that he has no liability to Ludwig & Robinson, and as a result, as Yelverton sought, that entity will not be allowed to share in distributions in the bankruptcy case. Regardless of whom Yelverton contends *is* liable for the insurance premiums, the fact that *he* is *not* liable for those premiums means that there can be no violation of the stay or the discharge injunction.[3] Because Yelverton's view of Senyi's liability is not essential to the court's determination that the complaint

---

[3] In his motion, Yelverton objects to the court's assertion that the Superior Court claims against Senyi are facially plausible. Yelverton likewise contends that, in assessing the plausibility of the Superior Court complaint, the court improperly took judicial notice of the pretrial statement in Adv. Pro. No. 09-10023 and of the Superior Court complaint. To address the propriety of taking judicial notice of those filings, Yelverton asks that the court hold an evidentiary hearing, at which time Yelverton would present evidence demonstrating that the Superior Court litigation is frivolous.
    Even if Ludwig & Robinson's claims against Senyi are lacking in merit, however, the debt Ludwig & Robinson is pursuing is not a debt that was owed by Yelverton. Accordingly, any attempt to collect this debt from Senyi or the Yelverton Law Firm cannot implicate the automatic stay or the discharge injunction. To avoid making unnecessary findings in disposing of Ludwig & Robinson's motion to dismiss, and to avoid any dispute with respect to the propriety of taking judicial notice of various facts and filings in assessing the plausibility of Ludwig & Robinson's Superior Court claims against Senyi, the court now clarifies that its observations with respect to the plausibility of the Superior Court claims were unnecessary to the court's disposition of the motion to dismiss. The legal basis for the court's dismissal of this adversary proceeding rests on the fact that Yelverton is not liable for the debt, and he is barred by the doctrine of judicial estoppel from relitigating the question of whether he is liable for the debt.

must be dismissed, the court rejects Yelverton's argument that the dismissal order ought to be vacated to the extent it took judicial notice of the pretrial statement in forming a view of Yelverton's view of Senyi's liability for the insurance premiums.[4]

B.

Next, Yelverton contends that discovery in the Superior Court has shown that there was never any transfer from the Yelverton Law Firm, PLLC to Senyi, and thus the pursuit of the fraudulent conveyance claim against Senyi is without foundation. That, however, delves into the merits of the fraudulent conveyance claim, a matter that is not at issue here. Instead, what matters is that Ludwig & Robinson has no claim against Yelverton, and thus its pursuit of Senyi for an alleged fraudulent conveyance is not a basis for finding a violation of the automatic stay or the discharge injunction.

---

[4] As noted in the court's *Memorandum Decision* granting the motion to dismiss, Yelverton cannot have it both ways: he cannot object to Ludwig & Robinson's proof of claim, to his advantage, on the grounds that he is not liable for the debt, but when it later suits his needs, turn around and contend that he is, in fact, liable for those premiums. The fundamental problem with Yelverton's attempt to state a claim for violation of the discharge injunction is that the debt Ludwig & Robinson is now pursuing in its claims against Senyi and Yelverton Law Firm, PLLC, is not a debt owed by the debtor, Yelverton. This court has already adjudicated the question of Yelverton's liability, and as previously discussed in part III of the court's *Memorandum Decision*, the fact that Yelverton does not owe the debt distinguishes this case from *In re Lumb*.

5

C.

Next, Yelverton contends that under Va. Code § 13.1-1049, as in effect on December 31, 2008, upon the dissolution of the Yelverton Law Firm, PLLC on December 31, 2008, with it having no then-known creditors, "all of the assets of YLF were distributed to Yelverton as the sole Member." Motion ¶ 38. He similarly contends that Yelverton Law Firm, PLLC's debts "were imposed on him personally on December 31, 2008, by operation of the Virginia Code, Section 13.1-1049.2 (D) . . . ."[5] *Id.* ¶ 49. Section 13.1-1049, however, provides that "[u]pon the winding up" of the company, the company's assets "shall be distributed" in a particular order (creditors first, etc.). In other words, the statute does not result in an automatic distribution of the assets of a PLLC to its members upon dissolution, and did not, by operation of law, convert assets already owned and held by Yelverton into assets deemed to have been distributed to him by the Yelverton Law Firm, PLLC upon the law firm's dissolution.

---

[5] Va. Code § 13.1-1049.2(D)(2), as in effect on December 31, 2008, provided, with an exception of no relevance here regarding posting of security, that:

> if the assets have been distributed in liquidation, against a member of the dissolved limited liability company to the extent of the member's pro rata share of the claim or the limited liability company assets distributed to the member in liquidation, whichever is less, but a member's total liability for all claims under this section may not exceed the total amount of assets distributed to the member.

6

Yelverton fails to allege when he made a distribution to himself and specifically what he distributed to himself. More fundamentally, Yelverton contends that the Yelverton Law Firm, PLLC had no assets:

> 39. All assets that had been used by YLF or for its benefit had always been personally owned by Debtor Yelverton. The sole checking account for YLF was also always in the name of Debtor Yelverton and under his personal social security number. All income and expenses for YLF had always been reported to IRS under the individual tax return for Debtor Yelverton and under his social security number. YLF did not have its own TIN or EIN, nor file tax returns as a separate entity.

Yelverton's allegation that Yelverton Law Firm, PLLC had no assets of its own, renders meaningless Yelverton's assertion that the assets of Yelverton Law Firm, PLLC were distributed to him by operation of § 13.1-1049.

If Yelverton *had* distributed assets to himself from Yelverton Law Firm, PLLC, he would be personally liable under Va. Code § 13.1-1049.2(D)(2) for Yelverton Law Firm, PLLC's debts to the extent of the assets he had received.[6] As a practical matter, however, there could be no distribution and corresponding liability under 13.1-1049.2 because Yelverton Law Firm, PLLC had

---

[6] See the preceding footnote.

no assets to distribute.[7]  In any event, having failed to raise this as a basis for Yelverton's liability in Adv. Pro. No. 09-10023, and the court having entered a final judgment in that proceeding declaring that Yelverton is not personally liable for these debts, Yelverton is barred under the doctrine of judicial estoppel from resurrecting the question of whether he is personally liable to Ludwig & Robinson for this debt.

That no liability arises under Va. Code § 13.1-1049.2 is consistent with the position Yelverton took in Adversary Proceeding No. 09-10023 (and regarding his objection in the main case to Ludwig & Robinson's proof of claim) that he owed no debt to Ludwig & Robinson, as well as being consistent with the judgment decreeing that he owed no debt to Ludwig & Robinson.[8] After the court has already adjudicated that Yelverton had no debt to Ludwig & Robinson, that law firm, in suing Senyi and

---

[7] Yelverton's liability under 13.1-1049.2 was capped by the amount of any distribution that was actually made to him, and if there were no assets from which to make such a distribution, it follows that no distribution was made and no liability arose.

[8] The court's judgment entered on June 2, 2010, in Adversary Proceeding No. 09-10023 decreed that it is:

> ORDERED and ADJUDGED that the claims of the plaintiff that it holds claims based on fraud are dismissed with prejudice, and it is declared that no fraud existed and no claims against the defendant exist.

A separate order addressing the objection to Ludwig & Robinson's claim against Yelverton was entered on June 2, 2010, in the main bankruptcy case, Case No. 09-00414, decreeing that Yelverton owed nothing to Ludwig & Robinson.

Yelverton Law Firm, PLLC, ought not face assertions that, under the theory of *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1 (B.A.P. 1st Cir. 2009), it is violating the automatic stay or the discharge injunction by seeking to coerce payment of a discharged debt.

As to Ludwig & Robinson's claims against Yelverton Law Firm, PLLC, Yelverton points to Va. Code § 13.1-1049.2(D)(1) which provides that, if the claim is not otherwise barred, the claim may be collected "[a]gainst the dissolved limited liability company, to the extent of its undistributed assets[.]" He thus contends that, because Yelverton Law Firm, PLLC's assets have been distributed to him, there is no basis for Ludwig & Robinson to sue Yelverton Law Firm, PLLC.  But if Yelverton Law Firm, PLLC has no assets, suing Yelverton Law Firm, PLLC can hardly constitute the application of pressure on Yelverton Law Firm, PLLC in an attempt to coerce Yelverton to pay the debts.  After all, if the Yelverton Law Firm, PLLC has no assets, it has nothing to lose.  Rather, if Yelverton Law Firm, PLLC has no undistributed assets from which to satisfy a judgment, Ludwig & Robinson bears the financial risk that it is now funding litigation against a judgment-proof defendant.

As to the fraudulent conveyance claims against Senyi, Yelverton concedes that he made conveyances to Senyi after December 31, 2008.  Ludwig & Robinson was entitled to explore

whether the conveyances were of property owned by Yelverton Law Firm, PLLC, and to explore whether it could pursue recovery from Senyi even if Yelverton Law Firm, PLLC assets had first been distributed to Yelverton before they were conveyed to Senyi. Even if Yelverton did have a liability to Ludwig & Robinson by reason of distribution of Yelverton Law Firm, PLLC assets to him, the automatic stay ought not bar Ludwig & Robinson from suing Senyi to ascertain whether a recovery can be made from her based on a fraudulent conveyance theory.

II

A.

Yelverton's motion for leave to file an amended complaint seeks leave to file an amended complaint that suffers from the same fundamental flaws as the original complaint.  The amended complaint would not survive a motion to dismiss, and the court will deny Yelverton's motion as futile.  *See James Madison Ltd. v. Ludwig,* 82 F.3d 1085 (D.C. Cir. 1996).

Yelverton's amended complaint again alleges that Ludwig & Robinson violated the automatic stay and the discharge injunction by pursuing certain claims against the debtor's former spouse, Senyi, and the Yelverton Law Firm, PLLC.  And like the original complaint, the amended complaint is premised on the theory, as illustrated *in In re Lumb*, that creditors may be held liable for

10

violation of the discharge injunction if they pursue frivolous claims against non-debtor third parties in order to coerce the debtor to pay a prepetition debt.  The debt at issue here, however, as already discussed above, is *not* a prepetition debt of the debtor, and thus the facts, even as alleged in more detail in the amended complaint, do not fit within the legal theory illustrated by *In re Lumb* and do not state a claim upon which relief can be granted. Accordingly, Yelverton's motion for leave to amend the complaint will be denied.

B.

Yelverton's amended complaint also seeks to add an additional claim against Ludwig & Robinson for violation of the discharge injunction based upon an alleged payment made by Senyi to Ludwig & Robinson in exchange for Ludwig & Robinson's dismissal of its Superior Court claims against Senyi.  Like Yelverton's other claims, which the court has already dismissed, this newly asserted claim suffers from the fatal defect that the debt for medical premiums on which Ludwig & Robinson was seeking to recover from Senyi was not a prepetition debt of Yelverton's, and thus a settlement of that claim between the parties to the lawsuit cannot be treated as violating the automatic stay or the discharge injunction that arose in Yelverton's favor.

In advancing this new claim (modeled on the claims already asserted), Yelverton also restates his contention that Ludwig &

Robinson's fraudulent conveyance claims against Senyi are frivolous, are barred by the doctrine of res judicata, and that bringing these claims against the Yelverton Law Firm, PLLC and Senyi violates the automatic stay and the discharge injunction. As explained in the court's *Memorandum Decision Re Motion To Dismiss* (Dkt. No. 14), if the fraudulent conveyance claims are barred as Yelverton contends, then Yelverton Law Firm and Senyi can raise that defense (or use it to their advantage to settle with Ludwig & Robinson on favorable terms) in the Superior Court.

    Contrary to Yelverton's contention, the automatic stay and discharge injunction do not bar Ludwig & Robinson from alleging misconduct on Yelverton's part in order to state a claim against Senyi and Yelverton Law Firm, PLLC, both non-debtor entities. Yelverton is not a named defendant in Ludwig & Robinson's complaint, and the allegations relating to his conduct are made to establish liability on the part of and the right to recover from someone other than Yelverton.  Yelverton's attempt to characterize the incorporation of allegations relating to him, but which are not made in order to state a claim for relief against him, as a violation of the automatic stay or the discharge injunction is unavailing.  If Yelverton were to file an amended complaint to add this additional claim it would not survive a motion to dismiss.

III

Orders follow.

[Signed and dated above.]

Copies to: All counsel of record.